Robert D.B. WATERS

v.

**Joseph McGURIMAN and the Borough of Lansdale, By Its Supervisors.**

Civ. A. No. 84–3316.

United States District Court,
E.D. Pennsylvania.

March 12, 1987.

Geoffrey L. Beauchamp, Norristown, Pa., for plaintiff.

Sean O'Callaghan, Paoli, Pa., for defendants.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

This action is brought by Robert D.B. Waters against the Borough of Lansdale and Officer Joseph McGuriman of the Lansdale Police Department pursuant to 42 U.S.C. § 1983 in connection with the plaintiff's arrest on April 21, 1982 by Officer McGuriman and prosecution by the Borough for loitering pursuant to Borough of Lansdale Ordinance No. 942 subsection (F), § 89–3(F). The plaintiff has filed a motion for summary judgment against the Borough on the ground that Ordinance 942 subsection (F) is unconstitutionally overbroad and vague and that enforcement of the Ordinance against the plaintiff deprived him of his constitutional rights. The Borough opposes the motion. For the reasons that follow, the Court finds that there is no genuine issue of material fact relative to the Borough of Lansdale's liability, and that the plaintiff is entitled to a favorable adjudication as a matter of law. However, since there is a genuine factual issue as to the amount of damages recoverable, summary judgment will be granted in favor of the plaintiff on the issue of liability, and the issue of damages will remain for future determination.

The material facts concerning which there are no genuine issues may be summarized as follows: On April 12, 1982, at approximately 4:30 a.m., the plaintiff was walking on a street in Lansdale. He was seen by Officer McGuriman, who approached the plaintiff, stopped him and asked him his name and destination. The plaintiff initially refused to talk to McGuriman. After two requests for identification, the plaintiff presented an identification card with his picture and address, and told Officer McGuriman that he was going to a 24–hour convenience store. McGuriman noted that the plaintiff was walking in the opposite direction from the convenience store. McGuriman then arrested the plaintiff for loitering at 4:20 a.m. and for being uncooperative. Several days after his arrest, the plaintiff appeared before the District Justice and was convicted of the sum-

mary offense of loitering and was fined $41.00. The plaintiff appealed his conviction to the Court of Common Pleas of Montgomery County. On May 31, 1984, the charges were dismissed by the Borough and the conviction was set aside. This action was filed on July 20, 1984.

The Ordinance at issue provides in pertinent part:

§ 89–1. Disorderly conduct and disturbing the peace.

Disorderly conduct and/or acts disturbing the peace within the limits of the Borough of Lansdale are hereby prohibited, and no person shall engage in such conduct or commit such acts within the limits of the Borough of Lansdale.

§ 89–2. Definitions.

A. Disorderly conduct and/or acts disturbing the peace are hereby defined for the purposes of this chapter as any act, word or conduct causing or tending to cause a disturbance of the peace and good order of the borough or causing or tending to cause any danger, discomfort or annoyances to the inhabitants of the borough or users of the borough thoroughfares. Such act, words or conduct, shall include but not be limited to, loafing, fighting, drunkenness, vagrancy, begging, profanity or indecent language or acts; the making or causing to be made of any unnecessary noises or disturbances, clamor, din or other sounds disturbing, or tending to disturb, the peace and quiet of the community; the carrying on of any business, trade, transportation, recreation or amusement in a manner, at a time or in a place which causes any unnecessary noise or disturbance, discomfort, danger or annoyance; the reckless or careless driving or any other use of vehicles or animals by owners, occupants, users or operators of the same as shall endanger the safety of, or interfere with the comfort and convenience of, inhabitants of the borough or persons using the thoroughfares of the borough.

\* \* \* \* \* \*

§ 83.3. Illustrative acts of disorderly conduct.

Without in any manner intending to limit or restrict the generality of the above definition of and prohibition against disorderly conduct and/or acts disturbing the peace, the following are hereby declared to constitute disorderly conduct and/or acts disturbing the peace:

\* \* \* \* \* \*

F. Loafing, loitering or strolling in or upon any street, alley or other public way or public place, or at any public gathering or assembly, or in or around any store, shop, business or commercial establishment or on any private property or place without lawful business.

Borough of Lansdale Ordinance, No. 942, Chapter 89 §§ 1–3.

The plaintiff challenges the Ordinance on its face as unconstitutionally vague and overbroad and as constituting a "policy" of the Borough. It is clear that a local government may be liable under 42 U.S.C. § 1983 where "the action that is alleged to be unconstitutional implements or executes ... a[n] ordinance ... officially adopted and promulgated by that body's officers." *Monell v. New York City Department of Social Sciences*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).

As the United States Supreme Court stated in *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982):

In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

455 U.S. at 494–95, 102 S.Ct. at 1191 (footnotes omitted). Furthermore, as the United States Supreme Court stated in *Thornhill v. Alabama*, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), an overly broad statute is one "which does not aim specifically at evils within the allowable area of state control but, on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or the press." *Id.* at 97, 60 S.Ct. at 742. Overbreadth attacks have been allowed where the statutes involved seek to regulate spoken words; rights of association; and the time, place and manner of expressive or communicative conduct. *Broadrick v. Oklahoma*, 413 U.S. 601, 612–13, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Although the challenged Ordinance does not appear to fit within the Supreme Court's categorization of an unconstitutionally overbroad enactment, the Court will not further consider "overbreadth" since the plaintiff has restricted his attack of the Ordinance as being "void for vagueness." The Court will, therefore, consider whether the Ordinance is unconstitutionally vague.

One who challenges a statute or ordinance as vague must prove that it is vague in the sense that no standard of conduct is specified at all. *Coates v. City of Cincinnati*, 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214 (1971). *See United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975) ("vagueness challenges to statutes ... must be examined in the light of the facts of the case at hand.") An ordinance will be void for vagueness if it fails to give a person of ordinary intelligence fair notice that his actions are prohibited by the ordinance or if it encourages arbitrary and erratic arrests and convictions. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972); *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903

(1983). Due process requires that laws provide a fair warning of that which is prohibited so that one can act accordingly, and they must provide sufficiently explicit standards for persons applying those laws. *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972). While the void for vagueness doctrine focuses on both actual notice to citizens and arbitrary and erratic enforcement, the United States Supreme Court determined in *Kolender v. Lawson* that the requirement that the legislature establish minimal guidelines to govern law enforcement is the "more important aspect of the vagueness doctrine." 461 U.S. at 357–58, 103 S.Ct. at 1858; *Pringle v. Court of Common Pleas*, 778 F.2d 998 (3d Cir.1985). As the Third Circuit stated in *Pringle:*

> [T]here is a constitutional mandate to legislatures to define criminal conduct carefully and specifically and thereby control the actions of those who apply the power of the state. The concept that "reasonable" persons should be aware of criminal prohibitions is therefore a standard used primarily to prevent legislatures from granting excessive decision-making authority to public officials.

*Id.* at 1001. In connection with the "minimal guidelines" element of the vagueness doctrine, it is clear that a law is impermissibly vague if it "delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis" because it thereby permits and encourages arbitrary and discriminatory enforcement of the law. *Hoffman Estates*, 455 U.S. at 498, 102 S.Ct. at 1193; *Grayned*, 408 U.S. at 108–09, 92 S.Ct. at 2298–99.

■ A federal court must consider any limiting construction that a state court or enforcement agency has offered in connection with the facial challenge to a state statute or ordinance. *Hoffman Estates*, 455 U.S. at 494 n. 5, 102 S.Ct. at 1191 n. 5. The parties represent that the Borough's ordinance has never been challenged and this Court has found no indication that any state court or enforcement agency has construed Ordinance 942(F). However, there are other "loitering" ordinances and statutes which have been challenged in the Pennsylvania courts. *See Commonwealth v. Duncan*, 456 Pa. 495, 321 A.2d 917 (1974) (Pennsylvania's loitering and prowling at night time statute not unconstitutionally vague); *Commonwealth v. McDermott*, 11 Pa.D. & C.2d 601 (1956) (same); *Commonwealth v. Speraw*, 25 Pa.D. & C.3d 690 (1983) (Reading's "loitering" law unconstitutionally vague and violative of first amendment rights); *Commonwealth v. Gonzalez*, 21 Pa.D. & C.3d 253 (1981) (Lebanon City disorderly conduct ordinance unconstitutionally vague). To the extent that the construction of the challenged ordinances and statutes are relevant to the construction of the ordinance at issue, they will be considered.

■ For the reasons set forth by Justice Douglas in *Papachristou, supra,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), this Court finds that Ordinance 942(F) is unconstitutionally vague. In *Papachristou,* a Jacksonville "vagrancy ordinance" provided *inter alia* that "[r]ogues and vagabonds ... common night walkers ... persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, disorderly persons, ... shall be deemed vagrants and, upon conviction ... shall be punished as provided for Class D offenses." 405 U.S. at 156 n. 1, 98 S.Ct. at 840 n. 1. Justice Douglas noted that the ordinance "makes criminal activities which by modern standards are normally innocent" and placed "unfettered discretion ... in the hands of the Jacksonville police." *Id.* at 163 & 168, 92 S.Ct. at 844 & 846. As heretofore pointed out, the Lansdale Ordinance prohibits disorderly conduct, including loafing and vagrancy and defines disorderly conduct as, *inter alia,*

> Loafing, loitering or strolling in or upon any street, alley or other public way or public place, or at any public gathering or assembly, or in or around any store, shop, business or commercial establishment or on any private property or place without lawful business.

The Court finds that the Lansdale Ordinance does not provide a person of ordinary intelligence fair warning regarding

what acts are prohibited and does not provide sufficiently clear standards for enforcement of the Ordinance. This Ordinance makes criminal such innocent activities as loafing or strolling upon a street or public gathering or assembly. Furthermore, it places "unfettered discretion" in the hands of the Lansdale police.

The defendant contends that there exists a genuine issue of material fact regarding the plaintiff's knowledge of the Ordinance. The issue of fair warning and notice, however, has been determined by the United States Supreme Court as being limited to whether it can be ascertained from the ordinance what conduct constitutes a violation of that ordinance, not whether the plaintiff knew that the Ordinance existed. *See Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

Pennsylvania enacted a statute in 1972 which provides:

Loitering and prowling at night time

Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor of the third degree.

18 Pa.Cons.Stat.Ann. § 5506 (formerly codified at 18 Pa.Stat.Ann. § 4418). The Supreme Court of Pennsylvania has held that section 5506 is not unconstitutionally vague. *Commonwealth v. Duncan*, 456 Pa. 495, 321 A.2d 917 (1974) (quoting *Commonwealth v. McDermott*, 11 Pa.D. & C.2d 601 (1956)). However, the Pennsylvania Supreme Court in *Duncan* points out that conviction under section 5506 can only occur if the following four elements are proved: (1) loitering or prowling; (2) maliciously; (3) at night time; (4) around a dwelling house or other place used wholly or in part for dwelling or living purposes belonging to or occupied by another. *Duncan*, 456 Pa. at 500, 321 A.2d at 922. There is no comparison, however, between the elements necessary for a conviction under section 5506 and the vague language of the Lansdale Ordinance. Section 5506 does not make "loafing" or "strolling" upon a

public street a crime. The requirement of "maliciously" can no way be inferred from the language of the Lansdale Ordinance. Therefore, looking to the Pennsylvania Supreme Court and lower court cases on section 5066 provides no guidance for the construction of the Ordinance.

Pursuant to the Lansdale Ordinance, "loafing" or "strolling" upon a street, alley, public way or other public place is a crime. It is even a crime to loaf or stroll at any public gathering or assembly. To "loaf" is defined in Webster's Third New International Dictionary (1961) as: "to spend time in idleness: to lounge or loiter about or along; do no work, ... usually near water, shade, or shelter— ..." As Justice Douglas stated in *Papachristou:*

Luis Munoz-Marin, former Governor of Puerto Rico, commented once that "loafing" was a national virtue in his Commonwealth and that it should be encouraged. It is, however, a crime in Jacksonville.

405 U.S. at 163, 92 S.Ct. at 844. If "loafing" were a criminal activity in Lansdale, one could expect that all the good citizens in that community would at some time or other become defendants in a criminal action.

"Strolling" has always been a happy pasttime. It has been eulogized in song and poetry. Today, many medical authorities claim that "strolling" should be a part of everyone's daily routine and some contend that it should replace "jogging" if one prefers a longer life.

At the end of subsection F of the Lansdale Ordinance is the phrase "without lawful business." That phrase can at best be interpreted as modifying "store, shop, business or commercial establishment or on any private property." Even with a tortured interpretation of the phrase claiming that it applies to "loafing, loitering or strolling in or upon any street, ...", recreational activities in Lansdale would likewise be severely curtailed. The phrase "without lawful business" does not cure the Ordinance's defect and "may be a trap for innocent acts." *Papachristou*, 405 U.S. at 164, 92

S.Ct. at 844. As eloquently stated by Justice Douglas:

> The difficulty is that these activities [walking, strolling, loitering and loafing] are historically part of the amenities of life as we have known them. They are not mentioned in the Constitution or in the Bill of Rights. These unwritten amenities have been in part responsible for giving our people the feeling of independence and self-confidence, the feeling of creativity.

405 U.S. at 164, 92 S.Ct. at 844.

The Lansdale Ordinance places "unfettered discretion" in the hands of the Lansdale police. There are no sufficiently clear standards governing the exercise of discretion by the Lansdale police. The Ordinance encourages arrests based on suspicion or anticipation of future criminality, concepts which are foreign to our legal system. *Papachristou*, 405 U.S. at 169–70, 92 S.Ct. at 847. *See Commonwealth v. Gonzalez*, 21 Pa.D. & C.3d 253 (1981). A "suspicious" person whom the police have no probable cause to arrest, may continue to walk along "only at the whim of a police officer" who stops that person pursuant to Lansdale Ordinance 942(F). *Shuttlesworth v. Birmingham*, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176 (1965); *Kolender*, 461 U.S. at 358, 103 S.Ct. at 1858. Due process requires fair and equal application of laws to all citizens. Because there are no sufficiently clear minimal guidelines in the Ordinance, a policeman is free to stop a "loafer", "loiterer" or "stroller" on a public street for any of a number of undefined reasons. Even if the Court strains the construction of the Ordinance and determines that "without lawful business" applies to loafing, loitering and strolling, the Court is hard pressed to ascertain what is "without lawful business." Is taking a stroll at night because one is unable to sleep "without lawful business"?

In addition to the due process violations discussed above, it appears that the Ordinance also infringes upon Fourth Amendment rights. In our constitutional system, police may only seize and detain or arrest a person if there is probable cause to believe that he has committed a crime (except under certain, strictly defined conditions where "a police officer, with reasonable suspicion of criminal activity, based on articulable facts, may detain a suspect briefly for purposes of limited questioning" and a brief "frisk" to the extent necessary to protect himself during the encounter). *Kolender*, 461 U.S. at 363, 103 S.Ct. at 1861 (Brennan, J., concurring); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). As Justice Brennan stated in his concurring opinion in *Kolender v. Lawson:*

> Where probable cause is lacking, we have expressly declined to allow significantly more intrusive detentions or searches on the *Terry* [*v. Ohio* ] rationale, despite the assertion of compelling law enforcement interests. "For all but those narrowly defined intrusions, the requisite 'balancing' has been performed in centuries of precedent and is embodied in the principle that seizures are 'reasonable' only if supported by probable cause." *Dunaway v. New York*, 442 U.S. 200, 214 [99 S.Ct. 2248, 2257, 60 L.Ed.2d 824] (1979).

461 U.S. at 363, 103 S.Ct. at 1861 (Brennan, J., concurring). Pursuant to the Borough of Lansdale Ordinance, a policeman may not only stop and detain a person, but can also arrest that person on less than reasonable suspicion of criminal activity, based on articulable facts and circumstances. Such an arrest clearly flies in the face of the mandate of *Terry v. Ohio* and the balancing which has been performed in "centuries of precedent." In this case the plaintiff was arrested and convicted of "loitering" based upon the arresting officer's opinion that he was uncooperative in that he refused to respond to Officer McGuriman's questions. Even during a *Terry* encounter, "the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." *Terry v. Ohio*, 392 U.S. 1, 34, 88 S.Ct. 1868, 1886, 20 L.Ed.2d 889 (1968) (White, J., concurring). The Lansdale Ordinance permits detention and arrest on sus-

picions that would not pass scrutiny under the standards required by the Fourth Amendment.

For all of the foregoing reasons, this Court has determined that the Borough of Lansdale Ordinance 942(F) is unconstitutional in that it violates the due process clause of the Fourteenth Amendment. *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

 As heretofore pointed out, liability may be imposed against a municipality under section 1983 on the basis of an unconstitutional ordinance officially adopted and promulgated by the municipality's officers. *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035–36. Arrest and prosecution pursuant to an unconstitutional ordinance is a violation of section 1983. A municipality may not assert the good faith of its officers or agents as a defense to liability under section 1983. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Therefore, summary judgment will be granted in favor of the plaintiff and against the Borough of Lansdale on the issue of liability, and the issue of damages will remain for future determination.